IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

October 28, 2025 Session Heard at Lincoln Memorial University[1]

## RICKY A. DAVIS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 122661   Steven Wayne Sword, Judge**

_____

**No. E2024-01309-CCA-R3-PC**

_____

Petitioner, Ricky A. Davis, appeals the denial of his petition for post-conviction relief, arguing that the post-conviction court erred in denying his claims that trial counsel was ineffective by permitting the jury to hear that he had a prior conviction for causing bodily injury while using or displaying a deadly weapon, failing to challenge the admissibility of testimony that Petitioner had possessed a gun the day before the shooting, and failing to object to the introduction of the key witness's prior statement to police. Upon review of the entire record, the briefs and oral arguments of the parties, and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which TOM GREENHOLTZ and KYLE A. HIXSON, JJ., joined.

Joshua Hedrick, Knoxville, Tennessee, for the appellant, Ricky A. Davis.

Jonathan Skrmetti, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General, and Abigail H. Hornsby, Assistant Attorney General; Charme P. Allen, District Attorney General; and Danielle Jones, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

---

[1] Oral argument in this case was heard before students in the Duncan School of Law on the campus of Lincoln Memorial University, Knoxville, Tennessee.

*Trial*[2]

The Knox County Grand Jury indicted Petitioner for one count of first degree premeditated murder and one count of unlawful possession of a firearm after having been convicted of a prior violent felony. After a jury trial, Petitioner was convicted as charged and received concurrent sentences of life and eight years, respectively. This court affirmed Petitioner's convictions on appeal, and our supreme court denied review. *See State v. Davis*, No. E2019-01819-CCA-R3-CD, 2021 WL 2311665 (Tenn. Crim. App. June 7, 2021), *perm. app. denied* (Tenn. Oct. 13, 2021).

The facts relevant to this appeal show that on January 4, 2016, John Kyle ("victim") was shot outside the East Knoxville home of Darrisha Nelson. *Id.* at *2. Ms. Nelson was not at home at the time of the shooting but had three outdoor surveillance cameras. *Id.* She gave to police the video footage from the cameras recorded at the time of the shooting. The videos were played for the jury at trial. *Id.*

Ms. Nelson's cousin, Dwight Harris, said that he went to Ms. Nelson's home around 2:45 p.m. on January 4, 2016. When he arrived, the victim was "about to leave and then backed in." As the two men got out of their vehicles, Mr. Harris briefly spoke to the victim, who was on his phone and seemed distracted. Mr. Harris continued to the front door, and the victim began walking toward the street. *Id.* Mr. Harris saw the victim talking to a man but said he did not see the man's face, and he did not see anyone else in the area. Mr. Harris stated that it seemed like the victim and the man were having a "basic conversation, not any yelling or anything like that." Mr. Harris then heard shots, followed by the victim saying his name. *Id.* He ran to help the victim, who had been shot, and rushed the victim to St. Mary's hospital. *Id.* While en route, he asked the victim who shot him, but the victim only replied, "Get me to the hospital." *Id.*

Shanique McDowell testified that on January 4, 2016, she went to a movie and upon leaving, learned the victim had been shot. *Id.* at *1. Ms. McDowell said she had seen Petitioner with a gun at her mother's house in East Knoxville earlier that day, but she was not sure if the gun belonged to him or the "guy" who was with him. *Id.* She later testified that it was "probably a day or two" before the shooting when she saw Petitioner with a gun. She noted that "everyone" in East Knoxville "usually [had] a gun" for protection. *Id.* Ms. McDowell said that after the shooting, everyone on the "streets" was saying that Petitioner shot the victim. *Id.* at *2.

---

[2] While the trial transcript was not included in Petitioner's appellate filing, we take judicial notice of the trial transcripts and record. *State v. Lawson*, 291 S.W.3d 864, 869 (Tenn. 2009); Tenn. R. App. P. 13(c).

The morning after the shooting, Ms. McDowell spoke by telephone to her aunt, who was in a relationship with, and had children with, Petitioner. *Id.* at *1. Petitioner got on the call and told Ms. McDowell he shot the victim because the victim owed him money for pills. *Id.* He also told her he intended to shoot the victim, and he tried to shoot the victim in the head. *Id.* Later that day, officers transported Ms. McDowell to the Knoxville Police Department ("KPD"). *Id.* Ms. McDowell identified Petitioner in a photo array and gave police an oral statement before being asked to write down the telephone conversation she had with Petitioner. *Id.* At trial, Ms. McDowell read her written statement to the jury without objection: "[Petitioner] called me at 7:00 today and said he shot [the victim] in the chest because he owed him money, and he said he ran after he did it." *Id.*

On cross-examination, Ms. McDowell acknowledged that she and Petitioner were not friends. *Id.* When asked if she liked Petitioner, Ms. McDowell answered,

> I mean, I don't hate anyone, but what I'm saying is, he's done a lot to my family, you know what I'm saying? And my aunt or whatever, and like, you know, just the things they go through. No, I don't like some of the things he has put her through. So, I mean, I don't. Yeah, I don't like some of the things he's done.

*Id.* She said she did not know why Petitioner would confess to her. *Id.* She did not think Petitioner and her aunt should be together, and she admitted telling the police that "it was best" for Petitioner to go to jail. *Id.* However, she said she "wouldn't do nothing crazy" to get Petitioner away from her aunt and had no reason to lie to the jury. *Id.*

Roy Dobbins, who had grown up with Petitioner in the Lonsdale community, testified that he and Petitioner were in the Knox County Jail together in 2016. *Id.* at *3. Petitioner told Mr. Dobbins that he was there on a murder charge and told him about the victim and "all the stuff that went down with that." *Id.* Mr. Dobbins said Petitioner claimed the shooting was the second time he and the victim had "problems" and that the shooting was related to "higher up . . . in the organization." *Id.* Petitioner also claimed that "the first time didn't go through right" but "the second time, . . . he smoked [the victim's] ass." *Id.* Mr. Dobbins was asked if he took that to mean Petitioner had shot and killed the victim, and he answered, "Yeah, he said he did that." He added that Petitioner seemed proud of what he had done. *Id.*

Mr. Dobbins acknowledged that he had prior felony and misdemeanor convictions and was serving a prison term at the time of Petitioner's trial. *Id.* He initially spoke to police about information regarding other unrelated cases to receive "favoritism" from the State, but during that discussion, Petitioner's case came up. Mr. Dobbins said he did not receive a deal from the State for providing information in Petitioner's case; he was

testifying under subpoena. *Id.* However, he admitted he had an upcoming trial and was still hoping to receive "favoritism" from the State. *Id.*

Data extracted from the victim's cellphone showed that starting at 2:38 p.m. on January 4, the victim exchanged text messages with an individual who identified himself as "Rula." *Id.* at *4. In the messages, which had a threatening tone, "Rula" asked the victim where he was at that moment. *Id.* The last message was sent from the victim at 2:54 p.m., just minutes before he was shot and killed. *Id.* at *5.

Investigator Michael Washam of the KPD's violent crime unit testified that the text messages helped authorities identify Petitioner as the shooter. *Id.* The number associated with the cellphone was registered to an individual named Michael Fowler. *Id.* However, the person exchanging texts with the victim minutes before the shooting identified himself as "Rula." *Id.* During his investigation, Investigator Washam learned that Petitioner had a Facebook page named "Rulagang Disway." *Id.* The Facebook page, which was shown to the jury, included photographs of Petitioner by himself, photographs of Petitioner "with associates," and comments from Petitioner's relatives. Investigator Washam said "[i]t was very clear that was [Petitioner's] Facebook page." Additionally, although Investigator Washam was unable to contact Mr. Fowler, he determined that Mr. Fowler's relatives lived across the street from Petitioner, which was near Wilson Avenue, where the shooting occurred. *Id.* He also stated that it is common for people in the area to pay their debts with a prepaid phone that still had value. He said, "[i]t's not unusual to run . . . a burn phone and it have ten different people that's had it over a year period of time, if they're even listed."

The video recordings captured by Ms. Nelson's home surveillance cameras were played for the jury as Investigator Washam described the activity. In the initial interaction, the victim and shooter "g[o]t rather close" to one another and stayed "face to face for a little while" just before the first three shots were fired. The video then showed the shooter run and then turn back to pick something up and fire two more shots at the victim, who was on the ground. Investigator Washam noted that the shooter was "slightly shorter" than the victim and was wearing shoes with "distinctive white markings" which could be seen in the video. When Petitioner was brought into custody, he wore shoes the State argued were the same as those seen in the video. The shoes were shown to the jury and entered into evidence.

Dr. Darinka Mileusnic-Polchan, the Chief Medical Examiner for Knox County, participated in the victim's autopsy and prepared the final autopsy report, which showed the victim's cause of death as multiple gunshot wounds and the manner of death as a homicide. *Id.* at *4. After describing the injuries the victim sustained, Dr. Mileusnic-Polchan said that the trajectory of the direct shots indicated the victim and the shooter were about the same height or the shooter may have been slightly shorter. However, she pointed out that she

could not determine the exact height of the shooter without knowing how he was holding the gun or how close he was to the victim when the shots were fired. It was her opinion that the shooter was "relatively close" to the victim when the victim was shot.

To support Petitioner's charge of unlawful possession of a firearm after having been convicted of a prior violent felony, the State read the charging information for Petitioner's prior aggravated assault conviction, that Petitioner "did unlawfully and knowingly cause bodily injury . . . while said [Petitioner] was using and displaying a deadly weapon . . . ." Trial counsel did not object and no additional details about the incident were provided.

At the close of the State's case-in-chief, Petitioner moved for a judgment of acquittal, which the court denied. Petitioner did not to testify nor did he present any proof. The jury convicted him as charged and his convictions were affirmed on appeal. *Id.* at *11. Our supreme court declined review. *See State v. Davis*, No. E2019-01819-SC-R11-CD (Tenn. Oct. 13, 2021).

*Post-Conviction Proceedings*

Petitioner timely filed a petition for post-conviction relief addressing multiple issues. As related to this appeal, Petitioner argued that he was deprived of the right to the effective assistance of counsel because trial counsel permitted the jury to hear that he had a prior conviction for causing bodily injury while using or displaying a deadly weapon, trial counsel failed to challenge the admissibility of testimony that Petitioner had possessed a gun the day before the shooting, and trial counsel failed to object to the introduction of the key witness's prior statement to police.

Trial counsel was appointed to represent Petitioner in May 2017, nine months prior to Petitioner's trial. Trial counsel received discovery in the case, and she and her investigator reviewed it with Petitioner. She specifically recalled showing Petitioner relevant electronic evidence, including the text messages. She said that at the time of trial "we were as ready as we could be."

Trial counsel acknowledged that, in addition to first degree murder, Petitioner was charged with the unlawful possession of a firearm after having been convicted of a prior violent felony. She agreed that as a defense attorney, she would want to avoid the jury hearing about a client's prior felony conviction. Trial counsel filed a pretrial motion to exclude Petitioner's prior bad acts or convictions. In response, the State indicated to the trial court that it was willing to stipulate Petitioner's prior felony underlying the firearm charge, but that Petitioner was unwilling to enter into a stipulation. Trial counsel confirmed that she talked to Petitioner about stipulating to his prior felony conviction but "he didn't want to stipulate to anything." Because the prior conviction was a necessary element of the

charge and Petitioner would not stipulate, the trial court allowed the admission of Petitioner's prior conviction for aggravated assault.

Trial counsel admitted that she did not file a motion to sever Petitioner's two charges nor did she make a request to bifurcate the trial to avoid the prior violent felony conviction being admitted in Petitioner's first degree murder trial. She said that it was not common practice for her at the time to move for severance and admitted that at that time, she was unaware of then-existing appellate decisions on bifurcation as the preferred method to mitigate the prejudicial effect for a defendant charged with both a violent felony and unlawful possession of a firearm.

Regarding the testimony of Ms. McDowell, trial counsel said that her strategy was to attack Ms. McDowell's credibility. Trial counsel acknowledged that Ms. McDowell testified to seeing Petitioner with a gun "one to two days" before the shooting and that trial counsel did not object to the testimony. She said there was no strategic reason for her failure to object and agreed the testimony did not appear to be relevant and may have appeared to be prejudicial. However, she said, "I don't feel like that, in any way, was what convicted [Petitioner]."

Trial counsel recalled that Ms. McDowell also testified about her recollection of Petitioner's involvement in the shooting and was then allowed to read to the jury a prior statement she made to police. Trial counsel could not recall why she did not object to Ms. McDowell's reading of the statement. She pointed out that on cross-examination she questioned Ms. McDowell about her personal dislike of Petitioner to show the jury Ms. McDowell's motive to lie. She admitted that in retrospect, the prior statement likely reinforced Ms. McDowell's testimony and her strategy "would have played better without that statement being read to the jury."

The post-conviction court entered a written order on August 2, 2024, with findings of fact and consideration of each of Petitioner's claims of ineffective assistance of counsel. The post-conviction court credited trial counsel's testimony and found that Petitioner's decision to refuse the proposed stipulation regarding his prior conviction precluded Petitioner from claiming trial counsel rendered deficient performance. The court further found that because denial of bifurcation requests had been held not to be in error, Petitioner had failed to show that he suffered any prejudice. As for the two claims relating to the testimony of Ms. McDowell, the post-conviction court found trial counsel to be deficient in failing to object to the testimony regarding Petitioner's possession of a gun before the shooting and to Ms. McDowell's reading of her prior statement. However, the post-conviction court found that Petitioner failed to prove he was prejudiced in either instance.

**Analysis**

On appeal, Petitioner claims the post-conviction court erred in denying relief on his claims of ineffective assistance of counsel. He contends that trial counsel was ineffective for permitting the jury to hear that he had a prior conviction for aggravated assault causing bodily injury while using or displaying a deadly weapon, failing to challenge the admissibility of testimony that Petitioner had possessed a gun the day before the shooting, and failing to object to the introduction of a key witness's prior statement to police. The State responds that Petitioner failed to demonstrate deficient performance regarding the prior conviction and failed to show that Petitioner was prejudiced as a result of trial counsel's alleged deficiencies on his remaining claims. We agree with the State.

Under the Post-Conviction Procedure Act, a criminal defendant may seek relief from a conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. As such, "[t]he deprivation of effective assistance of counsel is a constitutional claim cognizable under the Post-Conviction Procedure Act." *Howard v. State*, 604 S.W.3d 53, 57 (Tenn. 2020) (quoting *Moore v. State*, 485 S.W.3d 411, 418 (Tenn. 2016)).

"Appellate review of an ineffective assistance of counsel claim is a mixed question of law and fact that this Court reviews de novo." *Phillips v. State*, 647 S.W.3d 389, 400 (Tenn. 2022) (citing *Dellinger v. State*, 279 S.W.3d 282, 294 (Tenn. 2009)). However, the post-conviction court's factual findings are conclusive on appeal unless evidence preponderates against them. *Howard*, 604 S.W.3d at 57 (citing Tenn. R. App. P. 13(d)); *see also Arroyo v. State*, 434 S.W.3d 555, 559 (Tenn. 2014); *Fields v. State*, 40 S.W.3d 450, 456, n.4 (Tenn. 2001). Accordingly, as an appellate court, we are not to re-weigh or re-evaluate the evidence or substitute our inferences for those drawn by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). In general, we defer to a post-conviction court's findings concerning witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015); *Whitehead v. State*, 402 S.W.3d 615, 621 (Tenn. 2013).

When a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993); *Kendrick*, 454 S.W.3d at 457. Deficient performance is representation that falls below "an objective standard of reasonableness" as measured by prevailing professional norms. *Kendrick*, 454 S.W.3d at 457 (quoting

*Strickland*, 466 U.S. at 688); *see also Baxter v. Rose*, 523 S.W.2d 930, 932-33 (Tenn. 1975). A defendant asserting ineffective representation must overcome the strong presumption that counsel exercised reasonable judgment in all significant decisions. *Strickland*, 466 U.S. at 687-89; *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Kendrick*, 454 S.W.3d at 458; *Nesbit v. State*, 452 S.W.3d 779, 788 (Tenn. 2014).

To show prejudice, a petitioner must demonstrate a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Kendrick*, 454 S.W.3d at 458. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Reasonable probability is a lesser burden of proof than preponderance of the evidence. *Kendrick*, 454 S.W.3d at 458 (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). When the proof of guilt is overwhelming, proving prejudice is exceedingly difficult. *See Proctor v. State*, 868 S.W.2d 669, 673 (Tenn. Crim. App. 1992); *Bray v. State*, No. M2011-00665-CCA-R3-PC, 2012 WL 1895948, at *6 (Tenn. Crim. App. May 23, 2012) (finding that, in light of overwhelming evidence, petitioner could not demonstrate prejudice); *McNeil v. State*, No. M2010-00671-CCA-R3-PC, 2011 WL 704452, at *6 (Tenn. Crim. App. Mar. 1, 2011) (finding that overwhelming evidence of guilt precluded showing of prejudice from admission of evidence at trial).

Failure to satisfy either prong results in the denial of relief. *Strickland*, 466 U.S. at 697; *Nesbit*, 452 S.W.3d at 786-87. Accordingly, if either factor is not satisfied, there is no need to consider the other factor. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)). "[T]he petitioner is required to prove the fact of counsel's alleged error by clear and convincing evidence." *Phillips*, 647 S.W.3d at 401 (quoting *Dellinger*, 279 S.W.3d at 294); *see also* T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1).

Here, Petitioner first asserts that trial counsel was ineffective for permitting the jury to hear about his prior conviction for aggravated assault with a deadly weapon. Petitioner was charged with violating Tennessee Code Annotated section 39-17-1307(b)(1)(A) which provides that it is unlawful to possess a firearm if previously convicted of a felony involving "the use or attempted use of force, violence, or a deadly weapon." When a defendant is charged with a status offense such as unlawful possession of a firearm after having been convicted of a prior violent felony, "it is well established that 'specific reference[s] to [a] defendant's prior felonies' are 'relevant to establish an essential element of the crime for which the defendant is being tried.'" *State v. Foust*, 482 S.W.3d 20, 47 (Tenn. Crim. App. 2015) (quoting *State v. James*, 81 S.W.3d 751, 760-61 (Tenn. 2002)). This Court has noted that in cases like Petitioner's, bifurcation and stipulation are recognized as valid procedural options that may be used to mitigate potential prejudice to the defendant. *See State v. Johnson*, No. W2018-01222-CCA-R3-CD, 2019 WL 6045569, at *13-14 (Tenn. Crim. App.

Nov. 14, 2019) (citations omitted). However, neither is mandated by law. *State v. Richardson*, No. W2016-02227-CCA-R3-CD, 2018 WL 821775, at *16 (Tenn. Crim. App. Feb. 9, 2018) (noting that "none of the opinions of this court have required bifurcation"); *State v. Waddle*, No. E2024-00132-CCA-R3-CD, 2025 WL 46411, at *4 (Tenn. Crim. App. Jan. 8, 2025) (noting that "this [C]ourt has continued to hold that bifurcation is not required"), *no perm. app. filed*.

Petitioner argues that trial counsel was deficient because she failed to request bifurcation or to suggest to the court that a stipulation be entered. However, the State responds that Petitioner refused to stipulate to his prior conviction, and had trial counsel requested bifurcation, courts are not required to grant such a request. A stipulation is a mutual and voluntary agreement between the parties about certain matters before the court. *State v. Foust*, No. E2017-02420-CCA-R3-CD, 2019 WL 3824028, at *14 (Tenn. Crim. App. Aug. 15, 2019) (citing *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 701 (Tenn. Ct. App. 1999)). Stipulations of possibly true facts "obviate[] the need for evidence regarding the stipulated matters." *Overstreet*, 4 S.W.3d at 701. A trial court cannot require a Petitioner to enter a stipulation. *State v. Buchanan*, No. M2017-02268-CCA-R3-CD, 2019 WL 852192, at *6 (Tenn. Crim. App. Feb. 21, 2019) (citing *State v. Ford*, 725 S.W.2d 689, 691 (Tenn. Crim. App. 1986) (stating that "[s]tipulations are favored and should be encouraged and enforced by the courts, . . . [but] it is not the duty or function of a trial court to require one of the parties to the litigation to stipulate with his adversary.")).

Here, the post-conviction court found that the State was willing to stipulate to Petitioner's prior conviction, but Petitioner refused to do so. At the post-conviction evidentiary hearing, Petitioner did not testify about his willingness to stipulate his prior felony conviction and the post-conviction court accredited trial counsel's testimony regarding the stipulation. Nothing in the record preponderates against the post-conviction court's factual finding, and this Court is bound by such. *Howard*, 604 S.W.3d at 57. As the post-conviction court noted, because it was Petitioner's decision not to enter a stipulation that would keep the jury from hearing about his prior conviction, "he cannot now complain that his trial counsel was deficient . . . in this area."

The post-conviction court also found that trial counsel was not deficient for failing to request bifurcation. In *Foust*, this Court addressed the issue of bifurcation in cases such as Petitioner's, stating,

> [W]e note that the better procedure where, as here, the defendant is charged with offenses involving the use of violence and force and also charged with the status offense of unlawful possession of a firearm for having a similar prior felony conviction would be to bifurcate the proceedings and address the unlawful possession of a firearm charge separately.

- 9 -

482 S.W.3d at 46–47. "While referred to as the better practice, 'no procedure has been prescribed by [the appellate courts] for bifurcation proceedings in contexts involving a charge of possessing a firearm as a convicted felon.'" *State v. French*, No. W2024-01637-CCA-R3-CD, 2025 WL 2218667, at *7 (Tenn. Crim. App. Aug. 5, 2025) (quoting *Johnson*, 2019 WL 6045569, at *11-14), *perm. app. filed*. This Court has also repeatedly stated that bifurcation is not mandatory. *Id.*; *see also State v. Howard*, No. W2020-00207-CCA-R3-CD, 2021 WL 144235, at *4 (Tenn. Crim. App. Jan. 15, 2021); *Buchanan*, 2019 WL 852192, at *6; *Richardson*, 2018 WL 821775, at *16.

At the post-conviction hearing, trial counsel admitted that at the time of Petitioner's trial, she was unaware that bifurcation was an option and only became aware of the guidance in *Foust* after Petitioner's trial. Petitioner argues that trial counsel's failure to use "best practices" or to do anything to mitigate the prejudicial harm to Petitioner was deficient performance. However, trial counsel filed a motion to exclude proof of Petitioner's prior bad acts, and the court granted that motion in part, excluding one of two convictions the State had planned to introduce.

To determine whether trial counsel's performance was deficient, the question is whether the representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690). The record supports the post-conviction court's determination that Petitioner failed to demonstrate that trial counsel was deficient for not requesting bifurcation.

As Petitioner has not proven trial counsel was deficient on this issue, this Court is not required to consider the prejudice prong of the *Strickland* analysis. *Finch*, 226 S.W.3d at 316; *Phillips*, 647 S.W.3d at 401; *see also* T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1). However, we note that based on the overwhelming evidence of Petitioner's identity as the shooter, Petitioner has failed to show that he suffered prejudice for any perceived deficiency. Petitioner is not entitled to relief on this claim.

As for Petitioner's remaining ineffective assistance claims, the post-conviction court found that trial counsel's performance was deficient, but that Petitioner did not prove he had been prejudiced by the deficiencies and was therefore not entitled to relief. Petitioner contends that he was prejudiced by Ms. McDowell's testimony regarding his prior possession of a gun and by the admission of her prior statement to police. The State argues that because there was overwhelming evidence of Petitioner's guilt, Ms. McDowell's testimony and statement had little impact on the jury verdict, and as such, Petitioner did not suffer any prejudice. We agree with the State.

First, regarding deficiency, as the post-conviction court noted, Ms. McDowell's testimony that Petitioner was in possession of a gun "a day or two" before the shooting was evidence of a prior bad act under Rule 404(b) of the Tennessee Rules of Evidence. The court found "no logical or strategic reason" for trial counsel's failure to object. Petitioner argues that this evidence "must have had an impact on the jury in its consideration of [Petitioner]'s guilt." Petitioner's only argument in support of prejudice was that an objection to the evidence "should have been sustained summarily, and from that we can see why this is so prejudicial."

In finding that Petitioner failed to prove prejudice, the post-conviction court found:

[T]he State did not make use of this testimony or even follow-up on it during redirect. This was a brief and minor portion of Ms. McDowell's testimony. [Trial counsel]'s readdressing the matter on cross-examination did not elicit any additional testimony detrimental to the defense. The court finds that the Petitioner was not prejudiced by this testimony. It was not mentioned again by the State. Had this testimony not been introduced, there is no substantial probability that the verdict would have been different in light of all of the other evidence which established the identity of the Petitioner as the person who shot and killed the victim.

We conclude that the record supports the post-conviction court's findings. Given the overwhelming evidence of Petitioner's guilt, which included his admissions to Ms. McDowell and Mr. Dobbins that he shot and killed the victim, a video of the shooting, threatening text messages sent to the victim minutes before the shooting from someone using a unique nickname known to be used by Petitioner, and the shooter's "distinctive" shoes, which matched those worn by Petitioner when he was arrested, the testimony about his gun possession the day before the shooting would have had little impact on the jury.

Regarding Petitioner's final claim, the post-conviction court found trial counsel was deficient for failing to object to the admission of Ms. McDowell's prior written statement to police during the State's case-in-chief. As the post-conviction court noted, the statement was hearsay. *See* Tenn. R. Evid. 801, 802; *see also State v. Braggs*, 604 S.W.2d 883, 885 (Tenn. Crim. App. 1980) ("Prior statements of witnesses, whether consistent or inconsistent with their trial testimony, constitute hearsay evidence if offered for the truth of the matter asserted therein."). The post-conviction court found no "logical or strategic reason" for trial counsel's failure to object. Petitioner argues that when Ms. McDowell's statement was allowed to be read to the jury, trial counsel's strategy to attack the "credibility of the key witness was dead in the water," adding that "it strains logic to say that this had no impact on the jury's determination of [Ms. McDowell's] credibility." Petitioner asserts that the

admission of the statement was prejudicial because "it undermines the confidence in the fairness of the trial process."

In finding that Petitioner failed to prove prejudice, the post-conviction court found:

[T]he statement was very brief and contained little detail. It was only one sentence. The statement merely repeated the same information [Ms. McDowell] provided during her testimony. [Trial counsel] argued that Ms. McDowell was biased against Petitioner and was lying to get him out of her aunt's life. The statement did not hurt the defense theory of attack on [Ms. McDowell's] credibility. The court finds that the Petitioner was not prejudiced by this testimony. Had this testimony not been introduced[,] there is no substantial probability that the verdict would have been different in light of all of the other evidence which established the identity of the Petitioner as the person who shot and killed the victim.

As the post-conviction court found, the evidence of Petitioner's guilt, as discussed above, "greatly outweighed any unfair impact the deficiencies of counsel created." The record does not preponderate against the post-conviction court's findings. Petitioner is not entitled to relief.

## CONCLUSION

We conclude that the record supports the post-conviction court's finding that Petitioner was not denied the effective assistance of counsel. For the foregoing reasons, the judgment of the post-conviction court is affirmed.

S/ *Jill Bartee Ayers*
JILL BARTEE AYERS, JUDGE

- 12 -